IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| BENTON W. MILLER,<br><br>　　　　　　　Plaintiff,<br><br>　　vs.<br><br>UNION PACIFIC RAILROAD COMPANY, a Delaware corporation; SWIFT TRANSPORTATION COMPANY OF ARIZONA, LLC, a Delaware corporation; ABDIKADIR MOHAMED, ABDINASIR DIRIE, and SWIFT TRANSPORTATION CO. OF ARIZONA, LLC, a Delaware limited liability company;<br><br>　　　　　　　Defendants. | **8:18-CV-568**<br><br>**MEMORANDUM AND ORDER** |

This matter is before the Court on four motions for summary judgment. Filing 134; Filing 158; Filing 195; Filing 198. This case arises out of a collision between a train and a semi-truck. Filing 54 at 4. Plaintiff, Benton Miller, the conductor on the train involved in the collision, brings the present action for damages stemming from the collision against defendant Union Pacific Railroad Company ("Union Pacific") under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51 et seq., and against defendants Swift Transportation Company ("Swift"), Abdikadir Mohamed, and Abdinasir Dirie, under theories of common law negligence and vicarious liability. Filing 54. Union Pacific, Swift, and Mohamed move for summary judgment on Miller's claims against them. Filing 134; Filing 195. Miller moves for summary judgment on Swift and Mohamed's contributory negligence defense, and Union Pacific joins his motion. Filing 158; Filing 167. Union Pacific also moves independently for summary judgment against Swift and Mohamed, asserting Mohamed was solely at fault for the collision. Filing 198.

## I. BACKGROUND

On December 21, 2015, around 1:00 a.m., a train operated by defendant Union Pacific collided with a semi-truck at a private rail crossing near Sidney, Nebraska. Filing 54 at 4; Filing 182-3; Filing 194-1 at 3. Plaintiff, Benton Miller, was Union Pacific's conductor aboard the train. Filing 54 at 4. Union Pacific's engineer, Sam Kinsinger, operated the train with Miller. Filing 136-2 at 28. Just prior to the collision, the train was traveling eastbound at about sixty-nine miles per hour, which was within the maximum speed (seventy miles per hour) for that section of track, as provided by federal regulations. Filing 194-1 at 5. Video from the train's track image recorder ("TIR") indicates there was some fog in the area. Filing 194-1 at 5. Miller estimates he and Kinsinger were only two to three hundred meters from the truck when they first saw it on the tracks. Filing 136-2 at 36. Train data recorder analysis indicates Kinsinger actuated the train's emergency braking system approximately one second, or one hundred feet, prior to the train impacting the truck. Filing 194-1 at 6.

Defendant Abdinasir Dirie owned the truck and provided transportation services for Swift pursuant to a contractor agreement between them. Filing 54 at 4; Filing 59 at 3. Under the agreement, when providing services for Swift, Dirie was to operate under the operating authority granted to Swift by the Department of Transportation ("DOT") and to display Swift's requisite identification accordingly. Filing 197-2 at 4, 7. The agreement also provided that while Dirie was operating under Swift's authority, Swift "shall have exclusive possession, control and use of the equipment during the term of [the] agreement." Filing 197-2 at 4. Dirie was further required to equip trucks he used when transporting for Swift with a Qualcomm communications system that was compatible with Swift's system, allowing Swift to communicate with drivers directly. Filing 197-2 at 4, 10.

Defendant Abdikadir Mohamed was Dirie's employee and drove the truck on the night of the collision, hauling goods for Swift under the contractor agreement. Filing 59 at 3; Filing 136-11 at 30-33. Mohamed was accompanied in the truck by his co-driver, Abdi Aden. Filing 136-11 at 12. Mohamed stated in his deposition that he was following global positioning system ("GPS") directions leading up to the collision. Filing 136-11 at 38-41. He claims the GPS directed him to turn right as he approached the tracks, at which point he turned onto the tracks themselves, believing them to be a road, and the truck became stuck. Filing 136-11 at 40-45. He also noted the roads were clear that night, though there was snow on the ground to the sides of the road, and it was foggy. Filing 136-11 at 20. Mohamed denied seeing any signs at the crossing before proceeding onto the tracks, but it is undisputed that signage, including stop, railroad crossing, no trespassing, and other signs, were present. Filing 136-11. Mohamed estimates the truck was on the tracks prior to the collision for ten to fifteen minutes, during which time he and his co-driver, who had been sleeping, were able to exit the truck and move a safe distance away. Filing 136-11 at 17-18. Mohamed stated he called 911 less than one minute after becoming stuck, but a translation and recording of the 911 call indicate the collision occurred less than a minute after the call began. Filing 136-11 at 17; Filing 136-15 at 2-3.

Miller is now suing Defendants for damages stemming from the collision, alleging the incident caused him mental and physical injury resulting in, among other things, lost wages and earning capacity. Filing 54. Miller alleges Mohamed is liable for his own common-law negligence, Dirie is vicariously liable as Mohamed's employer, and Swift is vicariously liable because Dirie was an agent/employee of Swift. Filing 54 at 5-7. Miller also brings a negligence claim under the FELA against Union Pacific, alleging it failed to provide a safe place to work because of certain inadequacies with the crossing. Filing 54 at 7. Swift and Mohamed assert that Miller was

contributorily negligent in causing his own injuries and that his injuries were caused by a third-party, namely Union Pacific. Filing 59 at 5. Union Pacific, Swift, and Mohamed stipulated to dismissal of their cross-claims against each other for property damages, but Union Pacific still has a claim for indemnification and contribution pending against the trucking defendants for any liability it incurs on Miller's FELA claim. Filing 63; Filing 67; Filing 131.

## II. ANALYSIS

There are now four separate motions for summary judgment pending before the Court. Filing 134; Filing 158; Filing 195; Filing 198. Union Pacific moves for summary judgment on Miller's FELA claim, arguing Miller cannot fulfill the elements of a negligence claim under the FELA. Filing 134; Filing 135. Miller moves for summary judgment on Swift and Mohamed's affirmative defense of contributory negligence, arguing the defense is preempted, and the evidence does not support their contention that Miller was negligent. Filing 158; Filing 159. Union Pacific joins Miller's motion against Swift and Mohamed, arguing for preemption. Filing 167; Filing 168. Union Pacific also independently moves for summary judgment against Swift and Mohamed. Filing 198. Swift and Mohamed move for summary judgment against Miller, in whole or in part, on a number of grounds. Filing 195; Filing 196. The Court will address each motion below.

### A. Summary Judgment Standard

"Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Garrison v. ConAgra Foods Packaged Foods, LLC*, 833 F.3d 881, 884 (8th Cir. 2016) (citing Fed. R. Civ. P. 56(c). "[S]ummary judgment is not disfavored and is designed for every action." *Briscoe v. Cnty. of St. Louis*, 690 F.3d 1004, 1011 n.2 (8th Cir. 2012) (internal quotation marks omitted) (quoting *Torgerson v. City of Rochester*, 643 F.3d 1031, 1043

(8th Cir. 2011) (en banc)). In reviewing a motion for summary judgment, the Court will view "the record in the light most favorable to the nonmoving party . . . drawing all reasonable inferences in that party's favor." *Whitney v. Guys, Inc.*, 826 F.3d 1074, 1076 (8th Cir. 2016) (citing *Hitt v. Harsco Corp.*, 356 F.3d 920, 923–24 (8th Cir. 2004)). Where the nonmoving party will bear the burden of proof at trial on a dispositive issue, "Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), *except* the mere pleadings themselves." *Se. Mo. Hosp. v. C.R. Bard, Inc.*, 642 F.3d 608, 618 (8th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). The moving party need not produce evidence showing "an absence of a genuine issue of material fact." *Johnson v. Wheeling Mach. Prods.*, 779 F.3d 514, 517 (8th Cir. 2015) (citing *Celotex*, 477 U.S. at 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265). Instead, "the burden on the moving party may be discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case." *St. Jude Med., Inc. v. Lifecare Int'l, Inc.*, 250 F.3d 587, 596 (8th Cir. 2001) (quoting *Celotex*, 477 U.S. at 325).

In response to the moving party's showing, the nonmoving party's burden is to produce "specific facts sufficient to raise a genuine issue for trial." *Haggenmiller v. ABM Parking Servs., Inc.*, 837 F.3d 879, 884 (8th Cir. 2016) (quoting *Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 853 (8th Cir. 2012)). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial." *Wagner v. Gallup, Inc.*, 788 F.3d 877, 882 (8th Cir. 2015) (quoting *Torgerson*, 643 F.3d at 1042). "[T]here must be more than 'the mere existence of *some* alleged factual dispute'" between the parties in order to overcome summary judgment. *Dick v.*

*Dickinson State Univ.*, 826 F.3d 1054, 1061 (8th Cir. 2016) (quoting *Vacca v. Viacom Broad. of Mo., Inc.*, 875 F.2d 1337, 1339 (8th Cir. 1989)).

### B. Union Pacific's Motion Regarding Miller's FELA Claim

Union Pacific moves for summary judgment on Miller's negligence claim against it under the FELA. Filing 134. The FELA makes a railroad liable for employees' injuries "resulting in whole or in part from [the railroad's] negligence." 45 U.S.C. § 51. To prevail on a FELA claim, a "plaintiff must prove the traditional, common law elements of negligence: duty, breach, foreseeability, and causation." *Andrews v. BNSF Ry. Co.*, 284 F. Supp. 3d 910, 915 (S.D. Iowa 2018) (citing *Consol. Rail Corp. v. Gottshall*, 512 U.S. 532, 543-44, 114 S. Ct. 2396, 2404, 129 L. Ed. 2d 427 (1994)). Union Pacific's arguments in favor of summary judgment focus on foreseeability and causation but also address the element of duty. Filing 135. Union Pacific argues Mohamed's conduct was unforeseeable, and thus any harm that befell Miller was unforeseeable. Filing 135 at 13-21. Union Pacific also argues it cannot have breached a duty to Miller because it had no notice of the truck being on the tracks, and its employee, Kinsinger, actuated the emergency brake when he realized danger was imminent. Filing 135 at 21-23. Union Pacific further argues there is no evidence to show anyone other than Mohamed caused the collision. Filing 135 at 24-31. Miller argues the evidence in the record is sufficient to permit a jury to infer that the type of harm Miller suffered should have been foreseen by Union Pacific, giving rise to Union Pacific's duty to prevent the harm. Filing 147 at 11-18. Miller also argues the evidence permits the reasonable inference that Union Pacific's negligence was a cause of his injuries. Filing 147 at 18-21. The Court agrees with Union Pacific that Miller's evidence that Kinsinger behaved unreasonably or that the crossing's design or construction caused the collision is insufficient to submit the matter to a jury.

With respect to the actions of its employee, it is well settled that under the FELA, Union Pacific may be liable for Miller's injuries if Kinsinger's negligence caused them. *See Sinkler v. Missouri Pac. R.R. Co.*, 356 U.S. 326, 330, 78 S. Ct. 758, 762, 2 L. Ed. 2d 799 (1958) ("[A] railroad worker may recover from his employer for an injury caused . . . by a fellow worker . . . ."). However, Miller has not set forth evidence from which a jury could reasonably conclude that Kinsinger failed to exercise reasonable care. Relying on one of Swift and Mohamed's experts, Richard Beall, Miller notes Beall criticized Kinsinger for failing to apply the brake or sound the horn more often when entering foggy conditions, indicating that his actions did not comport with a reasonable standard of care. Filing 147 at 2. Miller's own deposition testimony, the train's video recording, and other expert testimony establish, however, that the train was mere seconds from impact when the truck became visible, and at some point between it becoming visible and the collision, Kinsinger applied the brake. *See* Filing 136-2 at 9, (Miller stating the truck was two to three hundred meters away when first visible and noting his and Kinsinger's actions); Filing 160-3 at 23, 78 (expert Pollan noting brake was applied before impact and estimating crew could first see the truck from 800 to 1,000 feet away); Filing 194-1 at 6, 9 (ESI experts' report noting Kinsinger applied the brake and warning horn and the crew acted properly). Miller also stated during his deposition that despite observing Kinsinger, as his duties as the train's conductor required, with the specific purpose of ensuring he was operating the train in a safe manner, Miller did not see him do anything unsafe or improper. Filing 136-2 at 28-29. Thus, the evidence indicates that Miller, an experienced conductor who was actively observing Kinsinger leading up to the collision, could find no fault with Kinsinger's conduct. No reasonable juror could infer Kinsinger was negligent given such evidence.

With respect to the crossing's design or construction, Union Pacific argues "[t]here is no evidence attributing negligence to Union Pacific, and therefore the Plaintiff has failed to meet his prima facie case on the element of causation." Filing 135 at 24. Union Pacific points to multiple opinions in the record that Mohamed is to blame for the collision, including Mohamed's own statement that there was no one other than him to blame for the accident. Filing 135 at 26-27; *see* Filing 160-6 at 23 (Mohamed responding "no," when asked whether there was "anyone, other than yourself, that you blame for this accident"). Miller responds that just because another party's negligence contributed to his injuries does not mean that Union Pacific escapes liability under the FELA. Filing 147 at 18-20. Although Miller is correct that FELA allows for multiple parties to have negligently caused his injuries, there is no evidence indicating negligence on Union Pacific's part was a cause of his injuries here.

The FELA provides that a railroad will be liable to its employees "for such injury or death resulting *in whole or in part* from [the railroad's] negligence." 45 U.S.C. § 51 (emphasis added). Thus, the standard for causation under the FELA is relaxed as compared with the common-law negligence standard. *Conrail v. Gottshall*, 512 U.S. 532, 543, 114 S. Ct. 2396, 2404, 129 L. Ed. 2d 427 (1994). Courts have consistently held that under the FELA, a common-law analysis of proximate cause is misplaced; the test for causation under the FELA is whether railroad negligence "played any part, even the slightest, in producing the injury." *McBride*, 564 U.S. at 692, 131 S. Ct. at 2636, 180 L. Ed. 2d 637 (quoting *Rogers v. Missouri Pac. R. Co.*, 352 U.S. 500, 506, 77 S. Ct. 443, 448, 1 L. Ed. 2d 493 (1957)). However, "juries [in FELA cases] have no warrant to award damages in far out 'but for' scenarios. Indeed, judges would have no warrant to submit such cases to the jury." *McBride*, 564 U.S. at 704, 131 S. Ct. at 2643, 180 L. Ed. 2d 637 (internal citations omitted).

The evidence here is insufficient to show even "but for" causation. Though Swift and Mohamed produced an expert, Loumiet, who opined that the crossing was extra dangerous, Filing 228-5 at 8-10, Miller lacks evidence that the alleged dangerousness of the crossing caused the collision. Assuming a jury would find that the narrow crossing surface or steep grade was an unreasonable acceptance of risk by Union Pacific, no reasonable juror could conclude that the crossing's design caused the truck to get stuck given the evidence in this case. Mohamed's deposition testimony establishes that the truck's tire became stuck after Mohamed turned down the tracks thinking his GPS was directing him onto a road. *See* Filing 160-6 at 16, 40 ("Q: And then I thought I understood you to say that you were going to take another right-hand turn onto the railroad tracks because you thought the railroad tracks were a road. Is the correct? A: Yes, the way the GPS directed me," and Mohamed stating the "right front tire of the truck – of the tractor got stuck on the railroad track itself").

Mohamed caused the accident when he intentionally turned his semi-truck off the surface of the private crossing, where he had no authority to operate his truck, and attempted to drive down the tracks. Filing 160-6 at 40. The design of the crossing was not a factor in this accident. Mohammed's conduct was. Accordingly, Miller cannot meet even the relaxed causation standard under the FELA. Union Pacific's Motion for Summary Judgment must be granted.

**C. Miller's Motion Regarding Swift and Mohamed's Contributory Negligence Defense**

Miller moves for summary judgment on Swift and Mohamed's affirmative defense of contributory negligence. Filing 158. The thrust of Miller's argument is that Swift and Mohamed's defense is preempted by the Federal Railway Safety Act ("FRSA"), 49 U.S.C. § 20106. Filing 159 at 12-17. Miller also argues Swift and Mohamed lack sufficient evidence to demonstrate contributory negligence even if the claim is not preempted. Filing 159 at 17-20. Union Pacific

joins Miller's motion, arguing Swift and Mohamed's defense is preempted by the FRSA. Filing 167. Swift and Mohamed argue their claim is saved under 49 U.S.C. § 20106(b), which clarifies that state-law causes of action alleging violations of state laws or regulations that are not incompatible with other provisions of § 20106 are not preempted. Filing 165 at 27-30. The Court agrees with Miller and Union Pacific. As it relates to Miller, Swift and Mohamed's defense is nothing more than an excessive speed claim, which is preempted under the FRSA.

*1. FRSA Preemption*

Under the FRSA, state laws are generally preempted where a federal regulation or order concerning railroad safety or security "cover[s] the subject matter of the State requirement." 49 U.S.C. § 20106(a)(2). However, states may enforce a more stringent requirement if it: (A) is necessary to eliminate or reduce an essentially local safety or security hazard; (B) is not incompatible with a law, regulation, or order of the United States Government; and (C) does not unreasonably burden interstate commerce." *Id.* Essentially local safety hazards are "local situations which are not statewide in character and not capable of being adequately encompassed within national uniform standards." *Duluth, Winnipeg and Pac. Ry. Co. v. City of Orr*, 529 F.3d 794, 798 (8th Cir. 2008) (quoting *Nat'l Ass'n of Regul. Util. Comm'rs v. Coleman*, 542 F.2d 11, 14–15 (3rd Cir. 1976)). The FRSA's preemption provision goes on to clarify that state-law causes of action for damages shall not be preempted where it is alleged a party

> (A) has failed to comply with the Federal standard of care established by a regulation or order issued by the Secretary of Transportation (with respect to railroad safety matters), or the Secretary of Homeland Security (with respect to railroad security matters), covering the subject matter as provided in subsection (a) of this section; (B) has failed to comply with its own plan, rule, or standard that it created pursuant to a regulation or order issued by either of the Secretaries; or
> (C) has failed to comply with a State law, regulation, or order that is not incompatible with subsection (a)(2).

49 U.S.C. § 20106(b)(1).

*2. Application to Swift and Mohamed's Contributory Negligence Defense*

When asked what negligent acts or omissions by Miller contributed to the collision, Swift and Mohamed responded that "Plaintiff was negligently operating the train in foggy conditions that reduced visibility in the area and his ability to detect the truck and avoid the collision," and they reserved the right allege additional negligence if discovery revealed further instances of it. Filing 160-7 at 5. In response to Miller's present motion, Swift and Mohamed characterize Miller's actions as failing to "keep a proper lookout," but they repeatedly speak of Miller's supposed failure in terms of his not slowing the train in response to foggy, visibility-limiting conditions.[1] *See, e.g.*, Filing 165 at 24 (arguing "the crew should have applied the brake in such conditions, reducing their speed by a third to one half of the speed," and "[Miller/Kinsinger] breached the standard of reasonable care by not applying the brake when the train entered the thick fog"). Thus, Swift and Mohamed's argument that Miller was contributorily negligent relies on the fact that Miller should have slowed the train down when he encountered the fog. *See* Filing 165. This is an excessive speed claim, however, and it is preempted by the FRSA.

It is undisputed that federal regulations set the maximum speed for the area of track around the collision site at 70 miles-per-hour, and the train did not exceed that speed during the relevant time period. Filing 165 at 5-6. In the Eighth Circuit, it is well established that federal train speed regulations "cover" or "substantially subsume" the subject matter of any state requirement imposing a lower speed limit on trains. *Cowden v. BNSF Ry. Co.*, 690 F.3d 884, 890-91 (8th Cir. 2012) (noting "the FRSA not only established a ceiling for permissible train speeds, but also

---

[1] The Court also notes that there is no evidence the train crew was not maintaining a lookout. The evidence clearly indicates the crew did not see the truck until they were 800 to 1,000 feet away from it, possibly due in part to the fog, but there is no allegation that the crew should have seen it sooner and failed to do so because they were not looking. *See* Filing 136-2 at 9 (noting Miller estimated first seeing the truck from two to three hundred meters); Filing 160-3 at 78 (noting Pollan estimated the crew could see the truck from 800 to 1,000 feet); Filing 166-6 at 17 (noting Kinsinger saw the semi "just seconds" before impact).

precluded states from imposing lower ceilings"). Thus, to find Miller or Union Pacific liable for not slowing down in response to fog, the fog would need to be "an essentially local safety or security hazard." *See* 49 U.S.C. § 20106(a)(2)(A). Binding precedent is clear, however, that fog is not an "essentially local safety hazard." *Grade v. BNSF Ry. Co.*, 676 F.3d 680, 687 (8th Cir. 2012) ("In implementing the national regulations, the Secretary of Transportation was surely aware that fog would exist along railroad tracks on many occasions . . . . [Fog is] not uniquely local in character and could be adequately addressed at the national level. Thus, the local-condition savings clause does not apply . . . .").

Swift and Mohamed's argument that the Court should analyze preemption under 49 U.S.C. § 20106(b) instead of § 20106(a) is unavailing. *See* Filing 165 at 27-30; Filing 217 at 25-29. Swift and Mohamed offer no federal regulation or internal rule created pursuant to a federal regulation that Miller is alleged to have violated. *See* Filing 165. Accordingly, for their state-law negligence claim to avoid preemption, Swift and Mohamed must allege Miller "has failed to comply with a State law, regulation, or order that is not incompatible with subsection (a)(2)." *See* 49 U.S.C. § 20106(b)(1). The unavoidable problem for Swift and Mohamed is that any state rule requiring the train to slow down because of fog would be incompatible with 49 U.S.C. § 20106(a)(2) for the reasons just discussed in the preceding paragraph. Thus, Swift and Mohamed's reliance on Nebraska's "range of vision" rule, which establishes negligence as a matter of law when a driver is unable to stop in time to avoid a collision when "operate[ing] a motor vehicle on a public street or highway and, on account of the manner of operation," is misplaced. *See Burkey v. Royle*, 233 Neb. 549, 555, 446 N.W.2d 720, 725 (1989). Setting aside that a train is not operated on a public street or highway and is not a motor vehicle as understood for the purposes of the rule, if the rule requires a train crew to slow down in response to regularly occurring weather phenomena that

reduce visibility, it is incompatible with federal regulations that cover train speeds. *See Cowden*, 690 F.3d at 890-91.

Swift and Mohamed also conflate Miller's failure to slow down for conditions of reduced visibility with a failure to take action to avoid a known "specific, individual hazard." *See* Filing 165 at 28 (citing *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 675 n.15, 113 S. Ct. 1732, 1743, 123 L. Ed. 2d 387 (1993)). In *Easterwood*, the Supreme Court found excessive-speed claims are preempted under the FRSA, but it indicated "related tort law duties, such as the duty to slow or stop a train to avoid a specific, individual hazard," were something different, and state-law claims based on such a duty might still lie. 507 U.S. at 675 n.15, 113 S. Ct. at 1743, 123 L. Ed. 2d 387 (noting the claim before the Court alleged only that the train was traveling too quickly for the circumstances). "[A] 'specific individual hazard' must be a discrete and truly local hazard . . . ." *Van Buren v. Burlington N. Santa Fe Ry. Co.*, 544 F. Supp. 2d 867, 880 (D. Neb. 2008) (alteration original) (quoting *O'Bannon v. Union Pac. Ry. Co.*, 960 F. Supp. 1411, 1420 (W.D. Mo. 1997)). "The prototypical 'specific individual hazard' is a child standing on the track." *Id.* (citing *Bashir v. Nat'l R.R. Passenger Corp.*, 929 F. Supp. 404, 412 (S.D. Fla.1996)).

Swift and Mohamed's reliance on failure-to-yield cases for support is demonstrative of their conflation of the two different issues; they confuse their excessive speed claim with a failure-to-yield claim. *See* Filing 165 at 29-30 (citing *Dresser v. Union Pac. R. Co.*, 282 Neb. 537, 551, 809 N.W.2d 713, 723 (2011) (finding train crews have a duty to use "ordinary care to avoid an accident, which includes yielding to the right-of-way, when it appeared to a reasonably prudent person that to proceed would probably result in an accident"); *Illinois Cent. R. Co. v. Cryogenic Transp., Inc.*, 901 F. Supp. 2d 790, 804 (S.D. Miss. 2012) (allowing a failure-to-yield claim to

proceed where crew did not apply brakes in response to vehicle on tracks)).[2] If Swift and Mohamed were alleging that Miller saw the truck and failed to act to avoid the collision (a failure-to-yield claim), there would be no preemption issue because the truck lodged on the tracks could constitute a "specific, individual hazard." That is not what they allege, though; Swift and Mohamed allege Miller was negligent for not slowing in response to the fog. *See* Filing 160-7 at 5. The evidence before the Court suggests Miller and Kinsinger applied the brakes and actuated audible warnings when it appeared collision was imminent. *See, e.g.*, Filing 166-6 at 18-19 (Kinsinger noting both he and Miller applied the emergency brake, and he sounded the whistle); Filing 194-1 at 6 (expert report indicating the same). Even Swift and Mohamed's expert, Richard Beall, who was critical of the crew for not slowing down when entering the fog, did not take issue with their reaction once they saw the truck. *See generally* Filing 228-2 (Beall's report). Because Swift and Mohamed point to no evidence that the crew failed to act reasonably once Miller and Kinsinger could see the truck, and any claim of excessive speed is preempted, Miller's Motion for Summary Judgment on Swift and Mohamed's contributory negligence defense is granted.  Union Pacific's motion joining the same motion is likewise granted.

### D. Union Pacific's Motion Regarding Swift and Mohamed's Contributory/Comparative Negligence Defense

In addition to joining Miller's Motion for Summary Judgment on Swift and Mohamed's excessive speed-related contributory negligence defense, Filing 167, Union Pacific moves for summary judgment on the remainder of Swift and Mohamed's contributory/comparative

---

[2] Swift and Mohamed do cite an excessive speed case, *Bakhuyzen v. National Rail Passenger Corp.*, 20 F. Supp. 2d 1113, 1118 (W.D. Mich. 1996), in which the court found that visibility-reducing weather conditions could create a duty for a train's crew to slow down. However, the court's reasoning in *Bakhuyzen* is completely out of step with Eighth Circuit precedent on the matter, and thus holds no sway with this Court. *Compare Bakhuyzen*, 20 F. Supp. 2d at 1118 (noting "weather conditions are not capable of being adequately encompassed within uniform national standards"), *with Grade*, 676 F.3d at 687 ("[Foggy] conditions are not uniquely local in character and could be adequately addressed at the national level.").

negligence defense against it.[3] Filing 198. Union Pacific argues that Swift and Mohamed's remaining affirmative defense rests on the alleged negligent construction or design of the crossing, and such a claim is preempted under the Interstate Commerce Commission Termination Act ("ICCTA"), 49 U.S.C. § 10501(b). Filing 199 at 8. Union Pacific also argues the available evidence is insufficient to support Swift and Mohamed's claim that its alleged negligence played a causal role in the collision. Filing 199 at 14-20. Swift and Mohamed argue the FRSA, and not the ICCTA, govern the preemption analysis of railroad negligence related to the crossing, and under the applicable statute, their defense is not preempted. Filing 243 at 12-17. They also argue they have produced sufficient evidence to present a material question of fact for a jury. Filing 243 at 17-18. The Court agrees with Union Pacific that Swift and Mohamed's evidence is insufficient to present a material question of fact for the jury.

As discussed above, Swift and Mohamed's assertion that the train was operated at too fast a speed for the conditions is preempted under the FRSA. Swift and Mohamed's only other argument that Union Pacific was negligent relates to the narrow width of its crossing surface and the steep profile of the crossing. See Filing 243 at 17 ("UP designed and constructed a crossing that facilitated a truck becoming stuck"). However, as discussed when analyzing Miller's FELA claim against Union Pacific above, while Loumiet's opinions assessing the dangerousness of the crossing raise a question whether it was dangerously designed or constructed, see Filing 228-5 at 8-10, there is no evidence that the crossing's configuration caused the truck to become stuck. To the contrary, Mohamed's own testimony revealed that he intentionally, though because of a mistaken belief the track was a road, turned off the crossing surface and onto the tracks. Filing

---

[3] Nebraska law provides that in an action involving multiple defendants who were not acting as part of a common enterprise or plan, "the liability . . . for economic damages shall be joint and several . . . for noneconomic damages shall be several only. . . Each defendant shall be liable only for the amount of noneconomic damages . . . in direct proportion to that defendant's percentage of negligence . . . ." Neb. Rev. Stat. § 25-21,185.10.

160-6 at 40. Thus, the evidence is clear that it was not the design or construction of the track that caused the truck to become stuck; the truck's tire ended up stuck between the rails because it was intentionally driven off of the crossing surface. Therefore, Swift and Mohamed cannot show that Union Pacific's alleged negligence caused the collision, and summary judgment must be granted with respect to their defense.

### E. Swift and Mohamed's Motion Regarding Miller's Negligence Claims

Swift and Mohamed move for summary judgment on Miller's negligence claims against them. Filing 195. They offer five separate bases for their motion. Filing 196 at 1-2. First, they argue Miller offers insufficient evidence that Mohamed's actions or inactions were a proximate cause of the collision. Filing 196 at 1. Next, they argue Miller's evidence is insufficient to prove the collision caused his ongoing physical limitations. Filing 196 at 2. They similarly assert Miller's evidence is insufficient to demonstrate the collision caused his PTSD. Filing 196 at 2. Swift and Mohamed also assert Miller's evidence of lost wages and "future damages" is insufficient. Filing 196 at 2. Finally, they argue summary judgment should be granted as to Swift, because Swift is not liable for the actions of Dirie, who was an independent contractor, or his employee, Mohamed. Filing 196 at 2. The Court will address each of Swift and Mohamed's arguments in turn.

#### 1. Proximate Causation of the Collision

Mohamed and Swift argue that summary judgment is warranted because "Miller has not presented any expert opinions or evidence tending to demonstrate that Miller and Kisinger's own conduct in proceeding down the track at 70 mph in dense fog . . . was not an efficient intervening cause." Filing 196 at 13. Miller counters that whether "an intervening act cuts off a tort-feasor's liability comes into play *only when the intervening cause is not foreseeable,*" and any actions taken

16

by him were foreseeable. Filing 245 at 20 (emphasis Miller's) (quoting *Looney v. Pickering*, 232 Neb. 32, 38, 439 N.W.2d 467, 471 (1989)). Miller is correct.

The Court notes at the outset that Swift and Mohamed's argument here is largely another attempt at the excessive speed-based contributory negligence defense that the Court found to be preempted. *Compare* Filing 165 at 22-23, *with* Filing 196 at 12-3 (reusing much of the language from the previous document). The Court likewise rejects this argument here. "Clearly, a defendant cannot be relieved from liability for his or her negligence by the fact that the very harm from which the defendant has failed to protect the plaintiff has occurred." *Sacco v. Carothers*, 253 Neb. 9, 15, 567 N.W.2d 299, 304 (1997). There is evidence in the record to support a finding that Mohamed entered a private crossing he was not permitted to use, turned onto railroad tracks thinking they were a road, and then left his truck stuck on the tracks for ten to fifteen minutes in the middle of a dark and foggy night in rural Nebraska without calling anyone. *See generally* Filing 160-6. Swift and Mohamed's own expert concluded that with the truck on the tracks, even if the train had slowed down when entering the fog, the collision would still have been "unavoidable." Filing 148-5 at 5. Mohamed's alleged actions are negligent precisely because of the risk of a collision with a train, which is exactly what happened. Further, the evidence in the record indicates the Miller operated his train in accordance with applicable regulations and guidance, despite Swift and Mohamed's contention otherwise. *See, e.g.*, Filing 166-6 at 18-19 (Kinsinger noting both he and Miller applied the emergency brake and he sounded the whistle); Filing 194-1 at 6 (expert report indicating the same). Miller offers more than enough evidence to allow a jury to determine if Mohamed's actions were a proximate cause of the collision.

*2. Causation of Physical Injuries*

Swift and Mohamed next argue for partial summary judgment, asserting that Miller has not produced adequate evidence that the collision caused his left-shoulder injuries and on-going physical limitations. Filing 196 at 13-15. They specifically argue that expert opinions on medical causation are required here because determining whether the collision caused Miller's shoulder injuries and corresponding physical limitations is "beyond the comprehension of laymen." Filing 196 at 13 (citing *Thone v. Reg'l W. Med. Ctr.*, 275 Neb. 238, 244, 745 N.W.2d 898, 904 (2008)). They then restate the arguments set forth in their motion to exclude the testimony of Miller's treating shoulder surgeon and causation expert, Dr. Heber Crockett, and argue that because his opinions are inadmissible, Miller cannot meet his burden of proving the collision caused his ailments. Filing 196 at 13-15. Miller maintains his expert's opinions are admissible and notes that this case deals with an instance of a single, sudden trauma and not an issue of cumulative trauma or chemical exposure. Filing 245 at 30-31. Though Dr. Crockett's opinions are not without their issues, the Court finds Miller has produced sufficient evidence for his claims to survive summary judgment.

The Court will not re-analyze the admissibility of Dr. Crockett's causation opinions here, as a complete analysis is provided in the Court's Memorandum and Order of this date addressing Swift and Mohamed's motion to exclude his opinions. *See* Filing 252 at 4-15. To summarize the portions of that order relevant to the present motion for summary judgment, the Court finds that Dr. Crockett's opinion that the collision caused Miller's left-shoulder injuries was not reached by reliable methods, and thus excludes the opinion. Filing 252 at 13. The Court also excludes Dr. Crockett's opinion that Miller's physical limitations detailed in the FCE were caused by the collision, though the Court also allows Dr. Crockett to testify that Miller's shoulder injuries are consistent with the physical limitations he faces. Filing 252 at 15. The question remaining is

whether a jury has sufficient evidence with which to assess whether the collision caused Miller's shoulder injuries and limitations. The Court finds that the remaining admissible evidence in causation is sufficient for a jury to be able to decide the issue.

Nebraska courts distinguish between objective injuries and subjective injuries to assess whether expert medical testimony is required to establish causation. *E.g.*, *Eiting v. Godding*, 191 Neb. 88, 214 N.W.2d 241 (1974). Objective injuries do not require expert testimony and are "those where the causal connection is clearly apparent from the injury itself and the circumstances surrounding it or where the cause of the injury relates to matters of common experience, knowledge and observation of laymen." *Id.* at 91, 14 N.W.2d at 243-44. Subjective injuries, which require expert testimony to establish causation, "are of such a character as to require skilled and professional persons to determine the cause and extent thereof." *Id.* at 91-92, 14 N.W.2d at 244. "When symptoms from which personal injury may be inferred are subjective only, medical testimony is required." *Id.* at 91-92, 14 N.W.2d at 244 (citing *Daniels v. Bloomquist*, 258 Iowa 301, 138 N.W.2d 868 (1965)). "Medical expert testimony regarding causation based upon possibility or speculation is insufficient; it must be stated as being at least 'probable,' in other words, more likely than not." *Neill v. Hemphill*, 258 Neb. 949, 957, 607 N.W.2d 500. 505-06 (2000).

Here, Miller's injuries were no doubt subjective. *See id.* at 89-90, 14 N.W.2d at 242-43 (finding plaintiff's complaints of lasting pain that began soon after a car accident, absent obvious indicia of injury such as "cuts, bruises, or contusions . . . broken bones," constituted subjective injury). A lay juror could not have determined Miller tore his rotator cuffs without the assistance of expert testimony, for example. Dr. Crockett's opinion that the collision caused Miller's left-shoulder injuries is excluded, but Dr. Crockett is permitted to provide his opinion that the collision

caused his right shoulder injuries. *See* Filing 252 at 4-15; s*ee also* Filing 179-3 at 36 (Dr. Crockett stating, "the right, for sure, the left probably" in regard to causation of the injuries). Thus, lay jurors have medical expert assistance in assessing the likelihood that the collision was a cause of at least some of Miller's injuries. While Dr. Crockett cannot testify the collision necessarily caused Miller's functional limitations, he can testify that Miller's limitations are physiologically consistent with his shoulder injuries. *See* Filing 252 at 13-15. Dr. Crockett's opinions and testimony from Miller establishing that the limitations developed after the collision is sufficient to create a material question of fact. Unlike in a case in which no medical testimony whatsoever is offered, the evidence of injury here is not "grounded almost exclusively on the testimony of plaintiff." *See Eiting*, 191 Neb. at 91, 14 N.W.2d at 243 (excluding evidence of head trauma from a car accident based only on plaintiff's claim of headaches and other pain with no medical testimony). Accordingly, the Court finds that the cause of Miller's injuries and limitations presents a material question of fact within a jury's competence.

### 3. Causation of Mental Injuries

Swift and Mohamed move for partial summary judgment alleging Miller failed to produce admissible evidence that the collision caused his PTSD. Filing 196 at 15-14. Miller cites the opinions of his expert, Dr. Weiss, as evidence of causation. Filing 245 at 31-32. Swift and Mohamed concede that if their corresponding motion to exclude Dr. Weiss's opinions is denied, there is a question of fact for the jury. Filing 247 at 9 ("As such, the Court's ruling on Swift's Motion in Limine to exclude the opinions of Dr. Weiss correspondingly determines whether partial summary judgment should be granted as to this issue."). Because the Court denies Swift and Mohamed's motion to exclude Dr. Weiss's testimony, Filing 252 at 22, it finds there is a question of fact for a jury as to whether Miller's PTSD was caused by the collision.

*4. Damages*

Swift and Mohamed move for partial summary judgment alleging Miller fails to produce sufficient evidence establishing his damages. Filing 196 at 9-10. Again, they concede the issue is determined by whether or not the Court admits the testimony of one of Miller's experts, forensic economist Jeffrey Opp. Filing 247 at 16. Because the Court denies the motion to exclude Opp's testimony, Filing 252 at 24, there is a material question of fact remaining on the issue of Miller's damages.

*5. Swift's Vicarious Liability*

Finally, Swift and Mohamed move for summary judgment as to Swift only, alleging it is not vicariously liable for Mohamed's actions because Dirie is Mohamed's employer and an independent contractor. Filing 196 at 16-19. Miller argues that Swift exhibited more control over Mohamed's driving than one would find in a typical dispatcher–independent contractor relationship. Filing 245 at 33. Therefore, argues Miller, the nature of their relationship, and by extension whether Swift is liable for Mohamed's negligence, is a question of fact for a jury. Filing 245 at 33. The Court agrees with Miller that this issue presents a material question of fact for the jury.

In Nebraska, "one who employs an independent contractor is generally not liable for physical harm caused to another by the acts or omissions of the contractor or its servants." *Cruz v. Lopez*, 301 Neb. 531, 542, 919 N.W.2d 479, 490-91 (2018). Whether a party is deemed an employee or an independent contractor for the purposes of a negligence claim "is a question of fact," but "where the facts are not in dispute and where the inference is clear that there is, or is not, a master and servant relationship, the matter is a question of law." *Kime v. Hobbs*, 252 Neb. 407,

413, 562 N.W.2d 705, 711 (1997). Nebraska courts consider ten factors when considering whether a person is an employee or an independent contractor:

> (1) the extent of control which, by the agreement, the employer may exercise over the details of the work; (2) whether the one employed is engaged in a distinct occupation or business; (3) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision; (4) the skill required in the particular occupation; (5) whether the employer or the one employed supplies the instrumentalities, tools, and the place of work for the person doing the work; (6) the length of time for which the one employed is engaged; (7) the method of payment, whether by the time or by the job; (8) whether the work is part of the regular business of the employer; (9) whether the parties believe they are creating an agency relationship; and (10) whether the employer is or is not in business.

*Id.* at 414, 562 N.W.2d at 711. "The right of control is the chief factor distinguishing an employment relationship from that of an independent contractor." *Id.* at 414, 562 N.W.2d at 711 (noting control over the "methods and means," rather than the results, indicates a master–servant relationship).

### a. Extent of Control

Though titled a "Contractor Agreement," the terms of the deal between Swift and Mohamed's employer, Dirie, indicate Swift had significant control over how its loads were hauled. *See* Filing 197-2. Notably, Dirie was to operate under Swift's Department of Transportation ("DOT") operating authority while providing services to Swift, and Swift was to have "exclusive possession, control and use of the equipment during the term of [the] Agreement." Filing 197-2 at 4. Thus, the evidence indicates Swift, and not Dirie, was acting as a motor carrier rather than a mere broker on the night of the collision.[4] Dirie and his drivers were also required to comply with

---

[4] Nebraska has adopted federal definitions of employer and employee as it relates to motor carriers, indicating there could be a statutory employer–employee relationship even if a driver were otherwise considered an independent contractor. *Cruz,* 301 Neb. at 551-53, 919 N.W.2d at 495-96. Nebraska courts have not expressly determined if such a relationship would result in tort liability for the statutory employer under state law, however. *Id.* at 555, 919 N.W.2d at 497. Nevertheless, the Court finds Dirie's use of Swift's DOT authorization provides significant indicia of control.

"speed limit[s] as mandated by [Swift] policy or any applicable lower speed limit" while hauling for Swift. Filing 197-2 at 4. Dirie's truck, if used to transport goods for Swift, was required to be, and was, outfitted with a Qualcomm communication device that allowed Swift to communicate directly with drivers. Filing 197-2 at 4. As Swift and Mohamed noted in their motion, some direct communication between the contracting party and a driver regarding where to pick up and drop off loads does not typically go beyond the independent contractor relationship where the driver controls the route he takes. Filing 196 at 17 (citing *Hobbs*, 252 Neb. at 413, 562 N.W.2d at 711; *Sparks v. M&D Trucking, L.L.C.*, 301 Neb 977, 921 N.W.2d 110 (2018)). There is evidence in the record here, however, indicating that Swift did exercise control over the route Mohamed took. *See* Filing 197-1 at 31 (Mohamed stating Swift provided him with the routing for how to deliver the load); Filing 182-3 (Qualcomm device history noting, "DO NOT USE GPS DIRECTIONS GOING INTO THIS FACILITY!!! USE DIRECTIONS ON QUALCOM OR MAPTUIT"). Further, while Dirie could choose his employees, Swift was entitled under the agreement to bar any of his employees that it deemed unqualified from operating equipment while on a job for Swift. Filing 197-2 at 6. The Court finds these facts are sufficient to leave open a question for the jury as the control Swift exhibited over Mohamed's means and methods of transporting goods.

      b. Other Factors

      The other factors for consideration of employee versus independent contractor status under Nebraska law, taken together, are mixed. Truck driving can be a "distinct occupation or business" under Nebraska law and necessarily requires special skills and licensing, which Mohamed and Dirie provided for Swift. *See Hobbs*, 252 Neb. at 415, 562 N.W.2d at 712 (noting a truck driver was engaged in a distinct occupation). Dirie also owned the truck and was contractually obligated to keep it in good working order and provide necessary consumables such as oil and gas. Filing

197-2 at 7; *see also Hobbs*, 252 Neb. at 415, 562 N.W.2d at 712 (noting supply of instrumentalities where independent contractor owned truck and provided oil and gas). However, it was Swift who provided necessary DOT operating authority for the venture. Filing 197-2 at 4. As such, it necessarily also provided insurance for the cargo and public liability insurance, and Dirie and his employees were required to display Swift's identification and operating authority provided by Swift on the truck. *See* Filing 197-2 at 6-7. Thus, while Dirie provided much of the instrumentalities used to transport the goods for Swift, the evidence is insufficient to demonstrate independence from Swift. Dirie's freedom to solicit jobs from other brokers, his compensation on a per mile basis, the use of the "independent contractor" in the agreement, and the limiting of the contract to discrete jobs rather than specific continuing obligations weigh in favor of Dirie being an independent contractor. *See, e.g.*, Filing 197-2 at 9 ("[Dirie] shall be considered an independent contractor. . . ."). Trucking and transporting goods being a regular part of Swift's business and the use of its DOT authority rather than any held by Dirie cuts heavily in favor of Swift being an employer for present purposes, however.

There are factors favoring and counseling against finding a master-servant relationship between Swift and Mohamed that would make Swift liable for the driver's negligence. Neither the "chief" factor, the extent of control Swift exercised, nor the other factors are so clear as to permit only one reasonable inference. *See Sparks*, 301 Neb at 988, 921 N.W.2d at 121 ("By stating 'where the inference is clear,' this court means that there can be no dispute as to pertinent facts pertaining to the contract and the relationship of the parties involved and only one reasonable inference can be drawn therefrom."). Thus, the Court finds that whether or not there was a master–servant relationship between Swift and Mohamed such that Swift should be vicariously liable for Mohamed's negligence is a question of material fact that must be left to the jury.

## III. CONCLUSION

For the reasons stated herein,

IT IS ORDERED

1. Union Pacific's Motion for Summary Judgment (Filing 134) on Miller's FELA claim is granted;

2. Miller's Motion for Summary Judgment (Filing 158) on Swift and Mohamed's contributory negligence defense, and Union Pacific's motion joining (Filing 167), are granted;

3. Union Pacific's Motion for Summary Judgment (Filing 198) on Swift and Mohamed's comparative/contributory negligence defense against it is granted;

4. Swift and Mohamed's Motion for Summary Judgment (Filing 195) on Miller's negligence claims is denied; and

5. Union Pacific is dismissed from this case.

Dated this 12th day of March, 2021.

BY THE COURT:

Brian C. Buescher
United States District Judge